*785 OPINION.
Maequette:
All issues in controversy have been settled by stipulation of the parties except one, namely, whether the receipt of corporate stock in 1921 pursuant to a contract made in 1917 resulted in taxable gain to petitioner in 1921.
On March 1, 1913, and on February 12, 1917, petitioner owned a one-sixth interest in extensive timber lands in Texas, and she and her husband owned another one-sixth interest in the lands in community. On February 12, 1917, the owners of the land entered into contract respecting the timber as set out in our findings of fact. In June, 1917, petitioner individually owned a one-fourth interest, the value of which as of March 1, 1913, amounted to $104,673.75 for the land itself and to $1,571,171.28 for the timber. From the date of the contract until December 31, 1921, petitioner received $297,438.26 in cash for her share of the timber sold. She also received, in 1921, 500 shares of stock of the Weir Long Leaf Lumber Company, pursuant to the contract. The shares had a fair market value of $116,800. It is her contention that until she has received the full *786 amount of her capital investment in the timber, $1,571,171.28, no taxable income, profit or gain accrues to her.
The petitioner relies upon the decision of the Supreme Court in Doyle v. Mitchell Brothers Co., 247 U. S. 179. In that case a corporation owning timber lands operated its own mills and manufactured lumber from its own stumpage. The court held that for the purpose of computing net income for Federal tax purposes the company was entitled to deduct from its gross receipts from lumber sold the fixed market value of the standing timber cut during the taxable year, saying: “ * * * the deduction did but restore to the capital in money that which had been withdrawn in stumpage cut, leaving the aggregate of capital neither increased nor decreased, and leaving the residue of the gross receipts to represent the gain realized by the conversion.”
But the court distinctly negatived the idea that no taxable gain should be computed until the sales of lumber had fully covered the investment value of the entire stumpage tract. Speaking of the conversion of capital assets from standing timber into money, the court said:
The suggestion that the entire proceeds of the conversion should be still treated as the same capital, changed only in form and containing no element of income although including an increment of value, we reject at once as inconsistent with the general purpose of the act. Selling for profit is too familiar a business transaction to permit us to suppose that it was intended to be omitted from consideration in an act for taxing the doing of business in corporate form upon the basis of the income received “ from all sources.”
The principles thus laid down by the Supreme Court have been followed here. Petitioner was taxed each year only upon the net profit over investment value of the timber cut and sold, and capital representing the timber sold has been restored to her through deductions from gross income.
Petitioner also relies upon the decision in Burnet v. Logan, 283 U. S. 404. In that case the taxpayer sold and delivered certain shares of corporate stock for a consideration to be paid in part in annual installments from ore as received under a mining lease by the purchaser of the stock. The lease did not require the lessee to produce any maximum or minimum tonnage or to make any definite payments of ore. The court held that under those conditions the taxpayer was entitled toi a full return of capital investment before paying income tax based upon a conjectural market value of annual payments of ore.
Petitioner’s argument is based upon the assumption that the principle followed in the Logaav case, supra, should be universally applied where capital assets are sold, regardless of the conditions or manner of such sale. We do not concur in that yjqwpoint, nor do *787 we consider the Logon, case controlling in this proceeding. In that case the taxpayer made a definite sale of her stock in one company and delivered it to the purchaser. Her dominion over the stock was ended, although she received at the time only part of the agreed purchase price. Payment of the balance was dependent upon conditions which were uncertain and it was quite possible that such balance might never be paid in full. In the present proceeding there was no outright, completed sale of the entire stand of timber. Rather, the parties entered into a contract to sell such amounts of timber as the second party should cut and remove from the land. Florence A. Foster, 18 B. T. A. 819; Edward G. Swartz, Inc., 25 B. T. A. 1065; Carter v. Clark & Boice Lumber Co., 149 S. W. 278; Houston Oil Co. v. Boylein, 206 S. W. 815. Actual sale took place only when and to the extent the timber was cut and paid for. The consideration to petitioner was to be: (1) A cash payment for timber as and when cut, slightly greater than the investment value of the stumpage; (2) participation in the price received in excess of $13.50 per thousand feet for lumber sold; (3) a 'pro, rata amount of stock in the Wier Long Leaf Lumber Company after its original outlay had been reimbursed from profits on lumber sold. The second and third items of the consideration were not certain, it is true. But as petitioner received more than her capital investment in the timber footage cut each month she was not confronted with the hazard which existed in the Logan case, supra.
Petitioner also contends that the corporate stock she received in 1921 was part of an exchange in which neither gain nor loss is recognized. If the stock was received in exchange for property held for investment or for productive use in trade or business and the exchange was of property of a like kind or use, then no taxable gain resulted. Section 202 (c) (1), Revenue Act of 1921.
In our opinion the contention is not sound. Petitioner does not indicate what property she exchanged for the stock. Was it all of her interest in the standing timber, worth more than ten times the value of the stock? If so she would not then be entitled to any cash consideration for the timber as it was cut and presumably would have received none. Further, such an exchange would have divested her completely of any ownership of the timber, altogether contrary to the terms of the contract above referred to, and which contract, the record shows, was carried out according to its terms. If petitioner exchanged only a part of her timber interest for the stock, what degree of interest was so traded? The record is silent. The standing timber and the land on which it grew are the only species of property mentioned in the record which petitioner might have exchanged for the corporate stock. Nothing in the record indicates that she parted with her interest in the land. The situation here *788 presented is very similar to tRat in Hobbs et al., 26 B. T. A. 241. where the taxpayer contracted to sell oil lands and interests for a consideration partly of cash and partly of corporation stock, and contended that an exchange of properties had taken place. We there said:
We do not agree to this contention. The organization of the Hobbs Oil Company and the transfer to it of the lands and leases was merely a part of one main transaction, which was to sell certain oil lands and interests in oil lands * * * for a consideration of $2,100,000 cash and $600,000 capital stock of the Delaware Company. The fact that to perform the contract the organization of a common-law trust or association was resorted to as a means to carry through the deal does not alter the character of the transaction. There was no intention on the part of Hobbs or his associates to effect an exchange of their oil lands for stock in the Hobbs Oil Company, but their intention was to make a sale of their lands to Haskell and the Delaware Company by which they were to receive a large part of the agreed purchase price in cash and the balance in stock of the Delaware Company.
See also Commissioner v. Moore, 48 Fed. (2d) 526 (certiorari denied) ; Commissioner v. Garber, 50 Fed. (2d) 588.
We fully agree with the above decisions and hold that in the present proceeding there was no exchange of property within the meaning of the revenue act. The value of the stock received by petitioner in 1921, namely, $116,800, was properly taxable to her in that year.
Readjustment of petitioner’s income tax for 1921 should allow her a deductible loss of $31,705.98 with respect to litigation over timber land in the Canfield League Survey in Sabine County, Texas,’ should include only $10,009.96 of the dividends from the Vinton Petroleum Company as taxable income; and should include only $116,800 as the value of stock in the Wier Long Leaf Lumber Company.

Decision will be entered under Bule 50.